UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LAUREN S. ROSENBLATT, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | Civil Action No:  5:15-cv-953 |
| NATIONAL BOARD OF MEDICAL | § | |
| EXAMINERS, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff Lauren S. Rosenblatt ("Rosenblatt"), by and through her undersigned counsel,

commences this complaint against the National Board of Medical Examiners ("NBME" or

"Defendant"), for violating the federal and state non-discrimination statutes, namely the

Americans with Disabilities Act ("ADA") and the Texas Human Resources Code respectively

that requires qualified private entities to offer examinations in a place and manner that is

accessible to individuals with disabilities and best ensures that the examination accurately

reflects, not the examinees' disability, but rather his or her aptitude, achievement level, or

whatever other factor the examination purports to measure.

## INTRODUCTION

1.      This action challenges the discriminatory denial of appropriate testing

accommodations as requested by plaintiff, Ms. Rosenblatt, on the United States Medical

Licensing Examination Step 1 (USMLE Step 1 or Step 1) which is administered by Defendant.

The discrimination challenged herein has deprived plaintiff, Ms. Rosenblatt a person with

disabilities, from taking the USMLE Step 1 on a level playing field with her non-disabled peers.

1

These civil rights violations are ongoing and include discrimination and failure to provide appropriate accommodations in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, et. seq. as amended ("ADA") and the Texas Human Resources Code, Tex Hum. Res. Code §§121.001-121.011. Immediate and permanent injunctive relief is necessary to ensure that Plaintiff is no longer excluded from, deterred from or otherwise discriminated against in taking the USMLE Step 1.

2.      Defendant, NBME has failed to provide Plaintiff appropriate testing accommodations, which includes extended time (50% or time and a half) on USMLE Step 1 examination. Plaintiff furnished Defendant with extensive documentation of her disabilities and entitlement to accommodations as set forth in Defendant's policies for documentation to support requests for test accommodations. Plaintiff brings this action to enforce her statutory rights to appropriate accommodations and equal educational opportunities under the ADA and Tex. Hum. Res. Code.

3.      Defendant administers the USMLE Step 1, which is a standardized examination and requirement for medical licensure. USMLE Step 1 is often required for allopathic medical school graduation and residency eligibility in the United States.  Defendant has the legal, educational and professional responsibility to offer appropriate testing accommodations to individuals with disabilities on the USMLE Step 1. Such accommodations, which are neither expensive nor difficult to provide, allow individuals with learning disabilities and other cognitive impairments, like Plaintiff, to demonstrate their aptitude and skill level.

## JURISDICTION AND VENUE

4.      This action arises under the laws of the United States, specifically the Americans with Disabilities Act (ADA), 42 U.S.C. §12101 *et. seq.*  Therefore, this Court has subject matter

jurisdiction based on a federal question pursuant to 28 U.S.C. §1331 and 1343(a)(3) and (4).

This Court also has jurisdiction pursuant to 42 U.S.C. §2000a, providing for civil actions in this

Court by any person subject to discrimination on the basis of disability in violation of Title III of

the ADA and under 42 U.S.C. §1343. This Court further has supplemental jurisdiction pursuant

to 28 U.S.C. §1367.

5.       This Court has jurisdiction to issue a Declaratory Judgment pursuant to 28 U.S.C.

§2201(a) and further relief pursuant to 28 U.S.C. §2202.

6.       Venue is proper in this Court pursuant to 28 U.S.C. §1391, as the Defendant is

doing business in this judicial district by virtue of administering the USMLE Step 1 in this

district and has sufficient contacts for personal jurisdiction.  Alternatively and cumulatively,

venue is proper in this Court pursuant to 28 U.S.C. §1391 in that acts of discrimination have

taken place in this District and Ms. Rosenblatt resides in this District.

## PARTIES

7.       Ms. Rosenblatt is in her third year of medical school at the University of Texas

Health Science Center-San Antonia (UTHSCSA). She is a resident of and attends medical school

in Texas and ultimately hopes to be a physician in Texas. Along with the other students in Ms.

Rosenblatt's class, she intended to take the USMLE Step 1 shortly after the completion of her

second year of medical school; however, due to Defendant's discriminatory denial, she was not

able to take her examination along with her fellow classmates.

8.       The NBME is a District of Columbia not-for-profit organization headquartered in

Philadelphia, Pennsylvania.  NBME administers the USMLE, a three step examination, the

successful completion of which is required for medical licensure in the United States.

Additionally, one's level of performance on the USMLE is a prominent factor used in the highly

3

competitive candidate selection process by residency training programs.  Defendant is a private

entity that offers examinations related to applications and credentialing to postsecondary

education, professional and trade purposes and as such is subject to the non–discrimination and

appropriate accommodation requirements of the ADA. The NBME administers the USMLE

throughout the country, including in Texas and, specifically, the Western District of Texas.

9.      NBME engages in business in Texas and this judicial district and this action arises

from those business activities.

## FACTUAL ALLEGATIONS

10.     Ms. Rosenblatt is a 29 year old student in her third year (of a four year program)

of medical school and is expected to graduate in May 2017. In order for Ms. Rosenblatt to obtain

her medical licensure, she is required to pass separate steps of the USMLE, commonly referred

to as USMLE Step 1, USMLE Step 2-Clinical Knowledge, USMLE Step 2-Clinical Skills and

USMLE Step 3. Ms. Rosenblatt is preparing to take the USMLE Step 1, which she intends to

take in Texas.

11.     Ms. Rosenblatt is impaired by a Specific Learning Disorder (Reading). This

condition substantially limits the major life activities of thinking, learning, reading and test

taking, which are activities necessary to take the USMLE under standard conditions. The

Defendant has, contrary to the ADA, refused and continues to refuse to provide appropriate

accommodations for Ms. Rosenblatt's disabilities by refusing to provide her with additional time

(50% extended time) to take the USMLE Step 1.

12.     If Ms. Rosenblatt does not receive appropriate accommodations on the Step 1, her

exam results will not reflect her aptitude and achievement level as required by law.  Moreover,

she may score poorly or fail the examination which would adversely impact her ability to

graduate medical school, obtain medical licensure and/or qualify for a residency program

13.     Ms. Rosenblatt's situation is further exacerbated by the fact that UTHSCSA

requires a student to take and pass Step 1 of the USMLE in order to begin the Third Year of

UTHSCSA.  While UTHSCSA has granted Ms. Rosenblatt a scheduling exemption that allowed

her to begin her third year rotations, the exemption is conditioned upon Mr. Rosenblatt taking

and passing Step 1 during the winter.

### Ms. Rosenblatt's History of Disability and Accommodations

14.     Throughout Ms. Rosenblatt's entire education, she has been impaired by a

specific learning disability in reading.

15.     Ms. Rosenblatt's reading impairment was first evaluated and recognized in

second grade. A highly qualified psychologist conducted Ms. Rosenblatt's evaluation. Results of

her evaluation reflected that she read without fluency, she repeated words and often confused

common sight word. Her evaluation further noted that her reading rate was slow and reading

comprehension was below grade level.

16.     During Ms. Rosenblatt's primary education, her school placed her in an

instructional program to provide a highly specialized direct multi-sensory instruction for reading

impairments. Mr. Rosenblatt receive intensive instruction to improve her weaknesses in word

recognition, spelling, and decoding stemming from deficits in the phonological component of

language. Ms. Rosenblatt received this intensive instruction from first through fifth grades.

17.     Throughout middle and high school, Ms. Rosenblatt continued to receive

specialized instruction in reading.

18.     In ninth grade, Ms. Rosenblatt received another psychoeducational evaluation due to continued concerns with her learning. A highly qualified psychologist conducted Ms. Rosenblatt's evaluation. The results of the evaluation reflected that Ms. Rosenblatt had difficulty when asked to process visual symbols such as letter and numbers and she also had difficulty with both oral and written word retrieval on a timed task. It was further observed during the evaluation that when Ms. Rosenblatt read short passages, she read slowly and when she read silently, she mouthed the words while reading.  Furthermore, on reading assessment she made numerous word and or letter errors, substitutions, transpositions and omissions.

19.     Ms. Rosenblatt's evaluator confirmed that she continues to have a learning disability in reading and that she qualifies for and requires instructional accommodations. It was recommended that Ms. Rosenblatt receive 50% extended time for tests and quizzes, extended time for projects, audio books, assistive technology and work with a tutor to develop compensatory strategies for her impairment.

20.     Mr. Rosenblatt's high school approved for her to received 50% extended time on tests and quizzes as well as other academic accommodations.

21.     The College Board approved for Ms. Rosenblatt to receive 50% extended time on the SAT, SAT II and AP exams.

22.     Ms. Rosenblatt was approved for and took three SAT exams, two SAT II exams, and eight AP exams, each of which with 50% extended time.

23.     In 2008, Ms. Rosenblatt underwent another psychoeducational evaluation in order to obtain updated evaluation data. A highly qualified psychologist also conducted this evaluation. The evaluation indicated that Ms. Rosenblatt continued to demonstrate a slow rate of reading and

impaired information processing. Her evaluator recommended that Ms. Rosenblatt receive accommodations, which included 50% extended time on tests and examinations.

24.    Ms. Rosenblatt attended the Georgia Institute of Technology from 2005 to 2010 and was approved by the University's Disability Services Program to receive 50% extended time throughout her matriculation.

25.    Ms. Rosenblatt also attended a Post Baccalaureate Premedical Certificate Program at American University from September 2010 to the Spring 2011.  American University also provided her with academic accommodations, which included extended time on exams and quizzes (50%); use of a computer for in-class writing and essay exams and use of a note taker for lectures.

26.    In 2008 and 2011, Ms. Rosenblatt took the MCAT examination. Her requests for accommodations were wrongfully denied.  Despite, her extensive studying and practice for the MCAT, as a consequence of not receiving extended time, Ms. Rosentblatt was not able to complete all questions on the MCAT within the standard time. Accordingly, by not receiving the accommodation of extended time, Ms. Rosenblatt's MCAT score did not reflect her aptitude or achievement level.

27.    Ms. Rosenblatt was admitted to University of Texas Health Science Center San Antonio commencing in July 2013. University of Texas's ADA Compliance officer after a review of her supporting documentation approved Ms. Rosenblatt's request for accommodation. Pursuant to a Section 504 / Accommodations Plan (Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794), she has received 50% extended time on exams and a quiet exam environment throughout medical school.

28.     In 2014, Ms. Rosenblatt received another psychoeducational evaluation from a

highly qualified psychologist.  Her evaluator reported that Ms. Rosenblatt's visual processing

and verbal working memory are areas of significant weakness. With respect to the manner and

condition with which Ms. Rosenblatt performs tasks, it was noted, "[s]he is slower than expected

when asked to quickly encode and manipulate large chunks of information as opposed to when

timing/speed are not as essential and she can apply her superior reasoning skills."

29.     Ms. Rosenblatt's evaluator concluded based on the current and prior evaluations

that Ms. Rosenblatt has a Specific Learning Disorder in reading and recommended 50%

extended time on the USMLE.

30.     During her matriculation at UTHSCSA, Ms. Rosenblatt has taken numerous

objective examinations and has utilized 50% extended time in accordance with her 504 Plan.

31.     Despite her long history of disabilities and struggles, Ms. Rosenblatt has been

able to achieve considerable academic success due in large part to accommodations, extensive

tutoring, specialized remedial instruction and extensive amounts of studying and persistence.

**The USMLE Step 1**

32.     According to the NBME, "the USMLE Step 1 examination is intended to assess

whether [a medical student] understand[s] and can apply important concepts of the sciences basic

to the practice of medicine, with special emphasis on principles and mechanisms underlying

health, disease, and modes of therapy."[1]

33.     The Step 1 examination consists of questions presented in standard multiple

choice formats.  Step 1 has approximately 325 multiple choice test items, divided into seven 60-

minute blocks, administered in one eight hour testing session.

---

[1]     http://www.usmle.org/pdfs/bulletin/2015bulletin.pdf (last visited October 29, 2015).

34.     The NBME develops and administers the USMLE Step 1 at various test sites and

on various dates throughout the United States. The results of each student's scores are reported to

that student's medical school.

35.     Ms. Rosenblatt must pass the USMLE Step 1 in order to maintain her eligibility to

remain in medical school.  Furthermore, passing the USMLE Step 1 is required to graduate

medical school, to enter into a residency program, to be eligible to take the USMLE Step 2 and 3

examinations and to ultimately obtain medical licensure.  Furthermore, a failed attempt or poor

performance on the Step 1 can adversely impact her acceptance into a residency training

program.

### NBME's Denial of Ms. Rosenblatt's Request For Accommodations

36.     On or about December 1, 2014, the NBME received Ms. Rosenblatt's application

requesting accommodations on the USMLE Step 1. Ms. Rosenblatt's application included a

request for 50% extended time.

37.     Annexed to Ms. Rosenblatt's application for accommodations was documentation

which supported her request for extended time including her evaluation reports from highly

qualified psychologists who individually assessed her, school records documenting her approval

for extended time, records from the College Board documenting its approval of Ms. Rosenblatt's

extended time on numerous standardized tests and a personal statement from Ms. Rosenblatt

describing her disability and impairment.

38.     The documentation provided to the NBME substantially complied with the

documentation required by the NBME for requesting accommodations on the USMLE.  This

documentation demonstrated that Ms. Rosenblatt's evaluators recommended accommodations,

including extended time on tests and standardized examinations and that she previously received extended time on exams throughout school and on multiple standardized examinations.

39.     By letter March 6, 2015, Defendant NBME informed Ms. Rosenblatt that her request for accommodations for the USMLE Step 1 was denied and that no accommodations were approved.

40.     The reason for NBME's denial appears to be based solely on the outcome of selected psychological assessments and it assertion that "no school records were provided to show a developmental history of problems with learning that impacted [Ms. Rosenblatt's] academic functioning or limited major life activity."

41.     Charles Weiner, Esquire, Counsel for Ms. Rosenblatt, submitted a letter dated June 30, 2015.  Counsel's letter requested a review and reconsideration of NBME's decision. Counsel's letter summarized Ms. Rosenblatt's history of prior evaluations and use of accommodations; summarized the legal standards under the ADA; and requested that Defendant provide the accommodations recommended by Ms. Rosenblatt's evaluators and provided throughout high school, college, medical school and on numerous College Board examinations.

42.     Submitted with counsel's letter  of June 30, 2015 was further documentation supporting Ms. Rosenblatt's request for accommodations.  The documentation submitted included the following:

a.   Louise O'Donnell, Ph.D. – Evaluation addendum.

b.   Louise O'Donnell, Ph.D. – Evaluation Report- October 9, 2014.

c.   John R. Paddock, Ph.D., ABPP – Evaluation Report – June 24, 2008.

d.   Cheryl R. Hamilton, Ph.D. – Evaluation Report – December 4, 2001.

e.   Cheryl R. Hamilton, Ph.D. – Addendum Report – March 2, 2004.

f.   Karen A. Waldron, Ph.D. – Evaluation Report – February 24, 1995.

g.   Karen A. Waldron, Ph.D. – letter – March 21, 2015.

h.   Stephanie R. Johnson, Ph.D. – Neuropsychological Consultation – July 22, 2011.

i.   Thomas L. Matthews, M.D. Assistant Dean for Student Affairs- letter verifying approved accommodations at University of Texas, School of Medicine – August 1, 2013.

j.   Linda Mass, Senior Counselor – Memo verifying accommodations approved at American University – October 28, 2014.

k.   J. Denise Johnson Marshall, Director of Disability Services – letter verifying accommodations approved at Georgia Institute of Technology – June 23, 2008.

l.   Brent C. Spicer, Dean of Student – letter verifying accommodations approved at St. Mary's Hall – June 23, 2008.

m.   College Board – letter verifying approved accommodations on the College Board exams – June 26, 2008.

n.   College Board Student Score Report – October 21, 2004.

o.   College Board AP Student Grade Report – June 25, 2005.

p.   MCAT Exam Score Report.

q.   Jason M. D'Antonio, Ph.D. Department of Biology, American University – letter of recommendation – May 1, 2012.

r.   Phyllis Swinney, Learning Specialist, St. Mary's Hall – letter.

s.   Amy Hetrick, Teacher, St. Mary's Hall – letter – March 31, 2015.

t.   Lauren Rosenblatt – Personal Statement

43.     The forgoing documentation provided current and historical evaluations, which established that Ms. Rosenblatt has a long and well documented history of learning disabilities that impact her reading, learning, reading comprehension, reading fluency, and thinking at the same rate, condition and manner as most people. Moreover, the foregoing documentation provided proof that Ms. Rosenblatt previously received and currently receives 50% extended time accommodations in school and on several standardized examinations.

44.     By letter dated September 4, 2015, the NBME rejected Ms. Rosenblatt's request for accommodations.

45.     In spite of never having met Ms. Rosenblatt, never having tested her or never having evaluated her, NBME ignored multiple highly qualified professionals who observed and evaluated Ms. Rosenblatt and her history of receiving 50% extended time in school and on other standardized examinations in clear violation of 28 C.F.R. §36.

46.     The requested accommodations of 50% extended time is necessary to appropriately accommodate the condition and manner of Ms. Rosenblatt's limitations. Without this accommodation Ms. Rosenblatt will be unable to demonstrate her actual knowledge, skills and abilities on the USMLE Step 1.

47.     Ms. Rosenblatt has an indisputable disability that substantially limits her major life activities of thinking, learning, reading, concentrating, studying, writing, processing information and taking standardized examinations in the same condition and manner as most people. Under the ADA, Ms. Rosenblatt is entitled to the accommodation of 50% extended time. The NBME's refusal to provide the requested appropriate accommodations is a violation of Ms. Rosenblatt's rights under the ADA and the Texas Human Resources Code.

48.     As a direct and proximate result of NBME's violation of the ADA and Texas

Human Resources Code, Ms. Rosenblatt will be unable to complete her medical school

education in the same manner as her classmates if she does not successfully complete the

USMLE Step 1. Moreover, she will be placed at a distinct disadvantage of competing for quality

residency positions if she must take the examination without appropriate accommodations for her

disability. She will be irreparably harmed because she will lose the extensive time she has

invested in medical school and preparation for the examination; and she will be prevented from

competing on a level playing field with other students in medical school.  In the worst case

scenario, Ms. Rosenblatt's medical career and dream could end if she is unable to pass the

USMLE Step 1, because the NBME will not accommodate her disability as required by the ADA

and Texas Human Resources Code.

49.     Ms. Rosenblatt requires the requested accommodations on the USMLE Step 1

examination not to gain an advantage, but to attempt to level the playing field because her

functional limitations impact her ability to take this examination that non-disabled test takers do

not experience.

50.     Ms. Rosenblatt through counsel has notified NBME of its violation of the ADA

and requested that it remedy this matter by providing the requested accommodations.

## COUNT I – VIOLATION OF THE ADA

51.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully

herein.

52.     Plaintiff is an individual with a disability within the meaning of the ADA, 42

U.S.C. §12101 et. seq.  Plaintiff is a qualified individual within the meaning of the ADA in that

she meets all the eligibility criteria for taking the USMLE Step 1.

53.     Plaintiff requires appropriate accommodations to participate in a fair, full, and equal basis on the USMLE Step 1. The modifications that Plaintiff needs, namely 50% extended time, would not impose a fundamental alteration, but would attempt to level the field and allow her aptitude and abilities to be fairly and accurately measured.

54.     Defendant administers the USMLE examinations, which are examinations related to applications and credentialing for postsecondary education, professional, and trade purposes, within the meaning of the ADA, 42 U.S.C. § 12189.

55.     The ADA, 42 U.S.C. § 12189, requires Defendant to offer these examinations in a manner accessible to persons with disabilities.

56.     Title III of the ADA, which is enforced by the U.S. Department of Justice, states in pertinent part, "It is discriminatory to fail to make reasonable modifications to policies, practices, and procedures when necessary to provide goods and services to a person with a disability." 42 U.S.C. §12182(b)(2)(A)(ii).

57.     The Department of Justice regulations mandate that a private entity offering examinations modify its examinations as necessary to ensure full and equal access to persons with disabilities, including through the provision of extra time to permit completion.  28 C.F.R. §§ 36.309(b) & (c).

58.     The Department of Justice Regulations prohibit Defendant from administering the USMLE examinations without ensuring that the scores reported "accurately reflect the applicant's aptitude or achievement level or whatever other factor the test purports to measure, rather than reflecting the applicant's [disability]." 28 C.F.R. § 36.309(b)(1)(i).

59.     The Department of Justice (DOJ) Regulations require that when considering requests for modifications, accommodations, or auxiliary aids or services, the entity gives

considerable weight to documentation of past modifications, accommodations, or auxiliary aids

or services received in similar testing situations, as well as such modifications, accommodations,

or related aids and services provided in response to an Individualized Education Program (IEP)

provided under the Individuals with Disabilities Education Act or a plan describing services

provided pursuant to section 504 of the Rehabilitation Act of 1973, as amended (often referred as

a Section 504 Plan).  28 C.F.R. §36.309(b)(1)(v).

60.     The DOJ's ADA Guidance further provide, "[r]eports from experts who have

personal familiarity with the candidates should take precedence over those from, for example,

reviewers for testing agencies, who have never personally met the candidate or conducted the

requisite assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A, at 796.

61.     The DOJ's regulations require: "any request for documentation …is reasonable

and limited to the need for the modification, accommodations, or auxiliary aid or service

requested."

62.     Defendant has discriminated, and continues to discriminate against Plaintiff on

the basis of her disability by denying her an equal opportunity to demonstrate her aptitude and

achievement level on the USMLE Examinations in violation of the ADA, specifically 42 U.S.C.

§12182, §12189 and 28 C.F.R. §36.309.

63.     Defendant's discriminatory policies and practices violate Plaintiff 's rights under

the ADA and the regulations promulgated thereunder. Defendant's discriminatory policies and

practices include but are not limited to:

> a.     Failure to grant accommodations when Plaintiff submitted the requisite
> documentation and provided documentation of a history of comparable
> accommodations on standardized examinations and other academic
> examinations.
>
> b.     Failure to give considerable weight to Plaintiff's evaluators.

      c.      Failure to provide a clear explanation for denial.

      d.      Failure to engage in good faith in the interactive process to consider and implement effective accommodations to Plaintiff's disability.

      e.      Failure to give considerable weight to Plaintiff's prior approval and use of accommodations in school and on standardized examinations.

      f.      Failure to consider Plaintiff's request for accommodations without regard to the ameliorative effects of mitigating measures.

      g.      Failure to conduct a proper review and apply appropriate legal standards to Plaintiff's request for appropriate accommodations.

      h.      Placing an extreme burden of proof, beyond what is required by the ADA, to establish Plaintiff's disability or need for accommodations.

      i.      Making unreasonable requests for documentation or requiring documentation that is not relevant to Plaintiff's need for the requested accommodation.

64.     Plaintiff will be irreparably harmed if the NBME continues its unlawful refusal to provide her the appropriate test accommodations as requested and unless this Court grants injunctive relief prohibiting the continued violation of Plaintiff's ADA rights and compelling the NBME to provide the requested accommodation, in that:

      a.      Plaintiff's medical school career will be placed on hold because a passing score on the USMLE is a prerequisite to continuing her medical school education.

      b.      Given her history with prior examinations, Plaintiff is justifiably concerned that she may not pass the USMLE without the additional extra time accommodation to which she is entitled under the ADA.

      c.      Plaintiff's opportunity to engage in her career of choice is effectively on hold until the NBME is compelled to comply with the ADA.

      d.      Plaintiff will be unable to continue the same pace of her medical school career as her peers if she is unable to pass the USMLE Step 1 at this time;

      e.      Requiring Plaintiff to take the USMLE Step 1 without the extended time accommodation puts her at a distinct disadvantage given her disability;

f.      Reduced performance on the USMLE Step 1 as a result of not receiving her requested accommodation significantly reduces Plaintiff's future residency and professional career options.

g.      Plaintiff may face a future expulsion proceedings under her school's policy if she takes and fails to pass the USMLE Step 1 in a timely manner.

65.     NBME will not be harmed if the Court grants the requested injunctive relief. Thus, the balancing of harm favors granting the requested injunctive relief.

66.     The public interest will be served by granting the requested injunctive relief. The ADA was enacted as a matter of public policy to ensure that disabled persons are treated fairly and provided with opportunities equal to those persons in the community without disabilities. The public interest will not be served by allowing the NBME to continue its unlawful refusal to provide Plaintiff with the ADA accommodations to which she is justly entitled.

67.     As a result of the NBME's violation of the ADA, Plaintiff has suffered or will suffer great injury, including, but not limited to, lost employment opportunities, out-of-pocket pecuniary losses, and severe emotional distress and anguish.

68.     NBME's conduct constitutes an ongoing and continuous violation of the ADA. Unless enjoined from doing so, Defendant will continue to violate said law.  Said conduct, unless enjoined, will continue to inflict injuries for which Plaintiff has no adequate remedy at law. Consequently, Plaintiff is entitled to injunctive relief under the ADA, 42 U.S.C. § 12188.

## COUNT II – DECLARATORY RELIEF

69.     Plaintiff incorporates by reference the foregoing paragraphs as if set forth fully herein.

70.     A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties.  Plaintiff contends that Defendant violated and

continues to violate her rights under the Americans with Disabilities Act as amended, 42 U.S.C.

sections 12101, *et seq*. Based upon information and belief, Defendant denies these allegations,

thus declaratory relief is therefore necessary and appropriate.

71.     Plaintiff seeks a judicial declaration of the rights and duties of the respective

parties accordingly.

## COUNT III – VIOLATION OF TEXAS HUMAN RESOURCES CODE, TEX HUM RES. CODE §§121.001-121.011

72.     Plaintiff incorporates the foregoing paragraphs as if set forth fully herein.

73.     This court has supplemental jurisdiction pursuant to 28 U.S.C. §1367, in that all

claims are related and arise from a common nucleus of operative facts and Plaintiff expects to try

all related claims in one judicial proceeding.

74.     Plaintiff is an individual with disabilities within the meaning of Tex. Hum. Res.

Code §121.002, which prohibit unlawful discrimination against any person because such person

is or has been disabled.

75.     The Texas Human Resources Code further provides that private entities, such as

the NBME that offer examinations for professional licensing shall make the examination

assessable to persons with disabilities and make appropriate accommodations available. Tex

Hum. Res. Cod §121.011.

76.     The Texas Human Resources Code further provides that an entity that

discriminates against a person with a disability is deemed to deprive that person with a disability

of his or her civil liberties and that such harms give rise to a cause of action for damages.

77.     The acts and/or omissions of Defendant were intentional and/or done with

deliberate indifference to the protected rights of Plaintiff.

78.     Defendant has discriminated, and continues to discriminate against Plaintiff on

the basis of her disability by denying her accommodations, which deprives Plaintiff an equal

opportunity to demonstrate her aptitude and achievement level on the USMLE examinations and

further depriving Plaintiff the privileges and advantages of taking the USMLE in a

discriminatory free environment.

79.     As a result of the Defendant's violation of the ADA and Texas Human Resources

Code, Plaintiff has suffered or will suffer great injury, as set forth in the preceding paragraphs of

this Complaint, which are incorporated by reference, and in addition thereto has and will suffer

out-of-pocket pecuniary losses, and emotional distress and anguish.

80.     Defendant's conduct constitutes an ongoing and continuous violation of the ADA

and Texas Human Resources Code.  Unless enjoined from doing so, Defendant will continue to

violate said law.  Said conduct, unless enjoined, will continue to inflict injuries on Plaintiff.

Consequently, Plaintiff is entitled to injunctive relief, compensatory and punitive damages.

## RELIEF REQUESTED

1.     An order compelling the Defendant, or those acting as agents for or in concert

with it, to immediately cease and desist from its refusal to accommodate Plaintiff's request for

appropriate accommodations on the USMLE examinations and ordering that the Defendant

immediately comply with the ADA and Texas Human Resources Code by allowing Plaintiff the

requested appropriate accommodation on the USMLE, which shall included 50% extended time

on all sections of the examination, Said accommodation shall also be made applicable to all

Steps of the USMLE examinations.

2.     Make the above order permanent and that such order be made applicable to all

future examinations administered by Defendant and taken by Plaintiff.

3.     An order granting such other injunctive relief as may be appropriate.

19

4.      An order granting declaratory relief.

5.      An order awarding compensatory and punitive monetary damages.

6.      An award for attorney fees, costs, and expenses of suit incurred herein.

7.      Award for such other and further relief as the Court may deem just and proper.

Respectfully submitted

**DAVIS, CEDILLO & MENDOZA, INC.**
755 E. Mulberry Avenue, Suite 500
San Antonio, TX 78212
Telephone:  (210) 822-6666
Telecopier: (210) 822-1151


By:  */s/ Ricardo G. Cedillo*
        Ricardo G. Cedillo
        Texas Bar No. 04043600
        rcedillo@lawdcm.com
        Ryan J. Tucker
        Texas Bar No. 24033407
        rtucker@lawdcm.com

Charles Weiner, Esquire
**LAW OFFICE OF CHARLES WEINER**
Cambria Corporate Center
501 Cambria Avenue
Bensalem, PA 19020
Telephone:  (267) 685-6311
Telecopier:  (215) 604-1507
charles@charlesweinerlaw.com
(*Pro Hac Vice* Admission pending)


**ATTORNEYS FOR PLAINTIFF**


T:\18000 - 18999\18300-18399\18333.0002 Lauren Rosenblatt\Pleadings\Complaint-ROSENBLATT (Final).docx